IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OLIVE JAMES TYLER<br>　　　　Plaintiff,<br><br>vs.<br><br>NEURORESTORATIVE MENTIS<br>REHABILITATION,<br>　　　　Defendant. | §<br>§<br>§<br>§   CIVIL ACTION NO.<br>§   Jury Demanded<br>§<br>§<br>§<br>§ |

## PLAINTIFF, OLIVE JAMES TYLER'S, ORIGINAL COMPLAINT
## AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** Olive James Tyler, hereinafter called Plaintiff, complaining of and about Neurorestorative Mentis Rehabilitation, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.　　Plaintiff Olive James Tyler, an African-American female who is at least 40-years old, is a citizen of the United States and the State of Texas and resides in Fort Bend, Texas. At all times relevant to this suit, until her termination in August 6, 2020, Plaintiff was employed with Neurorestorative Mentis Rehabilitation.

2.　　Defendant Neurorestorative Mentis Rehabilitation is a partner in The Mentis Network, a Delaware Corporation, duly authorized to operate under the laws of the State of Texas, and service of process on the Defendant may be effected pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its Director, John W. Wood II, at 9551 Fannin Street, Houston, Texas 77045. Service of said Defendant as described above can be effected by personal delivery.

## JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a) and 28 U.S.C. § 1337. This is a suit in equity and at law authorized and instituted pursuant to 42 U.S.C. § 1981 and §1981a and it seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 124(a)(1) in that the unlawful employment practices alleged below were and are being committed within the State of Texas and the Southern District of Texas and defendant maintains records and other evidence relevant to this case in the Southern District of Texas.

## NATURE OF ACTION

5. This is an action under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. SECTION 2000e et seq. as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, color and national origin; the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621 et. seq., as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of age; and the Fair Labor Standards Act, 29 U.S.C. Section 201 et seq. as amended.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7. Plaintiff Olive James Tyler began her employment with Defendant on or about August 7, 2016 as a Life Skills Trainer (LST) at Defendant's rehabilitation care facility located at 9551 Fannin Street, Houston, Texas. Plaintiff is a 59-year-old black woman of Dominican Republic national heritage.

8. For nearly three years, Plaintiff worked successfully under a succession of nurse supervisors and a facility director. During this time, Plaintiff enjoyed positive working relationships with her supervisors, co-workers, and her patients, who often requested her specifically as their caregiver. The facility Director, Mr. John Wood, a native-born white male personally complemented Plaintiff that she was one of his best workers.

9. In mid-2019, Defendant, via Director Wood, installed Debra Eliff as nurse supervisor. Ms. Eliff is a native-born white female.

10. Although the nurse supervisor position had previously been reserved for a Registered Nurse (RN), Ms. Eliff, who was underqualified at the lower level of Licensed Vocational Nurse (LVN) was given the position. A black female RN had recently been denied the position and left Defendant company as a result.

11. Soon after Ms. Eliff's earliest interactions with Plaintiff, including an exchanges in which Ms. Eliff asked Plaintiff's age and another during which they had an exchange regarding their opposite religious beliefs, Ms. Eliff began a campaign of harassment and pressure against Plaintiff designed to make Plaintiff's work experience at the facility as harsh as possible.

12. Ms. Eliff's tactics included assigning Plaintiff the heaviest patient care assignments relative to her peers, changing Plaintiff's assignments without notice, changing Plaintiff's work schedule to include more undesirable night and weekend shifts.

13. Ms. Eliff accused Plaintiff of excessive tardiness and reported Plaintiff to Director Wood and his boss. A review of Defendant's fingerprint and passcode electronic access system conducted by Director Wood and his boss revealed the allegation to be false. Director Wood's boss gave Plaintiff a personal apology.

14. Ms. Eliff then engaged in a campaign of excessive scrutiny, monitoring, and criticism of Plaintiff in an attempt to build a case for Plaintiff's discipline and eventual termination. Ms. Eliff made attempts to surreptitiously follow and sneak up on Plaintiff in hopes of catching Plaintiff not working. Ms. Eliff told co-workers of Plaintiff to watch and follow Plaintiff and to report to her any negative information. Ms. Eliff asked that they take photos if possible.

15. On multiple occasions, Ms. Eliff would scream in Plaintiff's face to express dissatisfaction with some aspect of Plaintiff's work.

16. Plaintiff complained to Director Wood, and to several people in Human Resources, including Ms. Gretchen Adelmund, about the hostile work environment imposed upon her by her supervisor Eliff.

17. After being told of the complaints, Ms. Eliff's behavior did not improve. Instead Eliff retaliated against Plaintiff by relegating Plaintiff to the nightshift and assigning Plaintiff the facility's most menial tasks such as washing laundry, cleaning, mopping, and garbage removal.

18. After a full year of humiliation and oppression led by Ms. Eliff, Defendant, via Ms. Eliff and Director Wood, terminated Plaintiff on or about August 6, 2020. Defendant, through Ms. Eliff and Director. Wood, alleges that Defendant terminated Plaintiff for falling asleep during the nightshift. Plaintiff denies the allegation and video evidence in the possession of Defendant contradicts the allegation. Further, even if such an allegation were true, such a minor incident would not justify termination but for Defendant's unlawful and discriminatory effort to remove Plaintiff. Defendant's allegation is false and pretextual.

19. Multiple incidents evince that the animus and harsh treatment directed toward Plaintiff, Defendant's failure to correct it, and Plaintiff's eventual termination was due to her race, national origin, and age.

20. Ms. Eliff was witnessed by employees making the statement that there were "too many blacks" at the facility and that she "needed to get rid of some."

21. While Ms. Eliff frequently screamed and yelled at black and Hispanic employees under her supervision, the white employees were typically spared that humiliation.

22. Ms. Eliff was observed by employees of Defendant to be much more attentive to the needs and requests of the white patients than to the black patients.

23. In response to one of Plaintiff's complaints, a male employee in Human Resources told Plaintiff that her mistreatment by Eliff was probably due to Plaintiff's strong foreign accent.

24. Employees of Defendant observed that Ms. Eliff would "DNR" ("Do Not Request") techs and nurses of African descent from the nursing agencies.

25. Ms. Eliff inquired about Plaintiff's age shortly after arriving in the supervisor position. Plaintiff was in her upper fifties and was considerably older than the majority of her peers. Ms. Eliff and Defendant sought to force out Plaintiff and replace her with a younger, less experienced employee who would be less knowledgeable about proper procedures and employee rights and therefore would be more easily dominated.

## RACE, COLOR AND NATIONAL ORIGIN DISCRIMINATION

26. Defendant, Neurorestorative Mentis Rehabilitation, intentionally engaged in unlawful employment practices involving Plaintiff because of her race, color and national origin.

27. Defendant, Neurorestorative Mentis Rehabilitation, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race, color and national origin in violation of 42 U.S.C. Section 2000e-(2)(a).

28. Defendant, Neurorestorative Mentis Rehabilitation, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a).

29. Plaintiff alleges that Defendant, Neurorestorative Mentis Rehabilitation, discriminated against Plaintiff on the basis of race, color and national origin with malice or with reckless indifference to the state-protected rights of Plaintiff.

## AGE DISCRIMINATION

30. Defendant, Neurorestorative Mentis Rehabilitation, intentionally engaged in unlawful employment practices involving Plaintiff because of her age. At all material times Plaintiff was 40 years of age or older.

31. Defendant, Neurorestorative Mentis Rehabilitation, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's age in violation of the Age Discrimination in Employment Act.

32. Plaintiff alleges that Defendant, Neurorestorative Mentis Rehabilitation, willfully violated the protected rights of Plaintiff because of her age.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### BY NEURORESTORATIVE MENTIS REHABILITATION

33. Defendant Neurorestorative Mentis Rehabilitation intentionally or recklessly caused Plaintiff severe emotional distress by screaming at Plaintiff, manipulating Plaintiff's work schedule and duties to maximize discomfort, making false allegations against Plaintiff, enlisting Plaintiff's co-workers to monitor and spy upon Plaintiff, causing Plaintiff to fear the loss of her livelihood, and causing the unfair termination of Plaintiff. Defendant's conduct was extreme and outrageous and proximately caused Plaintiff severe emotional distress. Plaintiff suffered damages for which Plaintiff herein sues.

### NEGLIGENT HIRING, SUPERVISION AND TRAINING
### BY NEURORESTORATIVE MENTIS REHABILITATION

34. Plaintiff alleges that the conduct of Defendant Neurorestorative Mentis Rehabilitation constituted negligent hiring, supervision and training. Plaintiff alleges that Defendant Neurorestorative Mentis Rehabilitation did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Debra Eliff was unfit, incompetent, or a danger to third parties. Defendant Neurorestorative Mentis Rehabilitation knew or should have known that Debra Eliff was unfit and could foresee that Debra Eliff would come in contact with Plaintiff, creating a risk of danger to Plaintiff. Defendant Neurorestorative Mentis Rehabilitation's failure to exercise reasonable care in the hiring, supervision and training of Debra Eliff was the proximate cause of damages to Plaintiff for which Plaintiff hereby sues.

### RETALIATION BY NEURORESTORATIVE MENTIS REHABILITATION

35. Defendant Neurorestorative Mentis Rehabilitation instituted a campaign of retaliation which included taking away Plaintiff's weekend off days, relegating Plaintiff to night

shifts, assigning Plaintiff the heaviest patient care assignments relative to her peers, assigning Plaintiff to the most menial jobs, including mopping, cleaning, washing laundry, and garbage detail. Defendant, via Ms. Eliff, also ordered Plaintiff's coworkers to follow, watch, and even attempt to take pictures of any actions by Plaintiff that could be used against her for discipline and termination. This retaliation was and is due to Plaintiff exercising her rights by opposing a discriminatory practice and making a charge. Plaintiff suffered damages for which Plaintiff herein sues.

### FLSA RETALIATION BY NEURORESTORATIVE MENTIS REHABILITATION

36. In addition, Defendant Neurorestorative Mentis Rehabilitation unlawfully retaliated against Plaintiff after Plaintiff filed a complaint with Defendant's Human Resources department regarding late payment of earned overtime compensation and bonuses. Defendant's retaliatory acts included reduction of Plaintiff's work hours and termination of Plaintiff's employment. Plaintiff's insistence that she be timely paid and her exercising her right to initiate a complaint via Defendant's internal channels was a direct cause for the retaliatory and adverse actions taken against her. Plaintiff suffered damages for which Plaintiff herein sues.

### DAMAGES

37. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

   a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

   b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

   c. All reasonable and necessary costs incurred in pursuit of this suit;

      d.      Emotional pain;

      e.      Expert fees as the Court deems appropriate;

      f.      Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

      g.      Inconvenience;

      h.      Prejudgment interest;

      i.      Loss of enjoyment of life;

      j.      Mental anguish in the past;

      k.      Mental anguish in the future; and

      l.      Loss of benefits.

## EXEMPLARY DAMAGES

38.    Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## LIQUIDATED DAMAGES

39.    Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed willfully. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for liquidated damages.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Olive James Tyler, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the

cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, liquidated damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

RAMOND W. HOWARD, P.C.
1303 Turtle Creek Drive
Missouri City, TX 77489
Tel. (281) 437-5900
Fax. (281) 416-9517

By: _____
Richard W Howard
Attorney-in-Charge
Texas Bar No. 24099848
Southern District Bar No: 3159602
E-Mail: rIchard.howard@rwhpc-law.com
Attorney for Plaintiff
Olive James Tyler

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**